1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DWAYNE ALLEN HUBBARD,                      No.  2:21-cv-00040 WBS GGH

12                 Petitioner,

13        v.                                    FINDINGS AND RECOMMENDATIONS

14   LUIS MARTINEZ, Acting Warden,[1]

15                 Respondent.

16

17

18   *Introduction and Summary*

19            Petitioner, a state prisoner proceeding pro se, has filed a petition for writ of habeas corpus

20   pursuant to 28 U.S.C. § 2254.  The matter was referred to the United States Magistrate Judge

21   pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302(c).

22            It is indeed the unusual case where a conviction for indecent exposure will result in a life-

23   in-prison sentence. The undersigned has therefore thoroughly scrutinized the claims herein.  After

24   ////

_____

25            [1] The People of the State of California was previously named as the respondent.  Luis
26   Martinez is currently the Acting Warden of Correctional Training Facility ("CTF"), where
     petitioner is incarcerated.  "A petitioner for habeas corpus relief must name the state officer
27   having custody of him or her as the respondent to the petition." Stanley v. California Supreme
     Court, 21 F.3d 359, 360 (9th Cir.1994) (citing Rule 2(a), 28 U.S.C. foll. § 2254). Accordingly,
28   the court substitutes Luis Martinez, Acting Warden, as respondent.

1

careful review, however, the undersigned cannot find that the state courts' decisions applicable to those claims are AEDPA unreasonable.

*Factual Background*

The California Court of Appeal, Third Appellate District ("Court of Appeal") provided the following factual background:

> At approximately 10:00 p.m., after finishing class at Cosumnes River College, Nayeli B. stood at the top of a set of stairs in front of the Winn Center while awaiting her ride home. She stood on the left side of the stairs. It was dark, but the area was well-lit by streetlamps. Nayeli saw defendant walking toward her; there was no one else in front of the building. Defendant walked closely past her.
>
> After walking past Nayeli, defendant walked down the stairs and stood behind two signs with a several inch gap between them; the signs were to the left of the bottom of the stairs and approximately 36 feet from her. That area was illuminated by a thin-poled streetlamp located between defendant and Nayeli.
>
> Nayeli felt uncomfortable, so she called her girlfriend. Defendant "kept looking back staring at [her]" and "gawking" at her for approximately one to two minutes. Nayeli increased her attention on him so she could describe him for her girlfriend. She "noticed he was masturbating" while gawking at her. She did not see defendant pull out his penis, but she could see his penis, and she saw him moving his hand up and down in a "masturbating motion." She watched him masturbate for approximately 30 to 40 seconds. Defendant did not turn his back to her, position himself behind one of the signs, try to cover himself up, or stop gawking at her. Nayeli testified the light pole was "[a]bsolutely not" obstructing her view of defendant.
>
> Nayeli ran back into the building; she was crying and screaming. She told an employee that she had seen a man masturbating. She said defendant was "thrusting himself" and that he "showed [her] his privates." The employee called the police. Campus security arrived at the scene and arrested defendant within three to five minutes.
>
> The prosecution charged defendant with a single count of indecent exposure (Pen. Code, § 314, subd. 1) and alleged that he had been previously convicted of committing a lewd or lascivious act on a child (§ 288, subd. (a)). That previous conviction rendered the indecent exposure charge a felony. (§ 314, subd. 2.) The information further alleged defendant had three serious felony prior convictions within the meaning of section 667, subdivision (e)(2)(C)(iv) and section 1170.12, subdivision (c)(2)(C)(iv) -- lewd or lascivious act on a child under 14 years (§ 288, subd. (a)), assault with intent to commit a sexual offense (§ 220), and attempted kidnapping (§§ 664, 207, subd. (a)).

2

1
2
3
4

> A jury found defendant guilty of indecent exposure. In a bifurcated proceeding, the trial court found the allegations true. The court denied defendant's motion to dismiss the prior strike convictions pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 53 Cal.Rptr.2d 789, 917 P.2d 628. Applying the three strikes law, the court sentenced defendant to 25 years to life in prison.

5   People v. Hubbard, 52 Cal. App. 5th 555, 558-559 (2020) (footnotes omitted).

6   *Procedural History*

7   After denial of the petition for review in the California Supreme Court, the federal petition

8   was filed on January 8, 2021. ECF No. 1. After respondent's Answer was filed, ECF No. 11,

9   petitioner requested a stay of proceedings, ECF No. 15, which respondent did not oppose, ECF

10  No. 18.  However, because petitioner had not identified the federal claims he wished to exhaust,

11  the undersigned ordered petitioner to expressly identify such claims. ECF No. 19. Petitioner never

12  did so. Therefore, the undersigned recommended that the Motion to Stay be denied. ECF No. 20.

13  Petitioner thereafter filed an amended petition which was stricken as having been filed without

14  authorization, ECF No. 24; this amended petition contained two claims which had never been

15  specifically discussed before in state or federal court.[2] The Findings and Recommendations

16  regarding the Motion to Stay were adopted by the district judge, ECF No. 23.

17  *Issues Presented*

18      1.  Failure to [*Sua Sponte*] Instruct the Jury on the "Lesser Included Offense" of Attempted
19          Indecent Exposure

20      2.  [Ineffective] Assistance of Counsel (on grounds similar to Claim 1)

21      3.  Griffin Error in Prosecutor's Rebuttal Argument

22      4.  Admission of Irrelevant and Prejudicial Photographic Evidence

23  ////

24      [2] Petitioner presents the following new claims: "failure to provide footage of night in
25  question which could exonerate defendant" and "Penal Code 1181 (5)(6) creates new trial or
    reduces judgment of defendant." ECF No. 22 at 5, 7. With respect to the "footage' claim, it is
26  doubtful that any so-called footage exists, and if it does, what it shows.  Petitioner sheds no light
    on how such footage would "exonerate" him.  The Cal. Penal Code § 1181 claim is simply a
27  repetition of the claims already made, i.e., this section gives the scenarios for when the trial court
    can reform a verdict, and the subsections (5),(6) mirror the claims made herein.  This repetitive
28  state law claim is not cognizable in federal habeas corpus.

1    *Legal Standards*

2           The statutory limitations of the power of federal courts to issue habeas corpus relief for

3    persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and

4    Effective Death Penalty Act of 1996 ("AEDPA"). The text of § 2254(d) provides:

5               An application for a writ of habeas corpus on behalf of a person in
                custody pursuant to the judgment of a State court shall not be
6               granted with respect to any claim that was adjudicated on the merits
                in State court proceedings unless the adjudication of the claim—
7

8               (1) resulted in a decision that was contrary to, or involved
                an unreasonable application of, clearly established Federal
9               law, as determined by the Supreme Court of the United
                States; or

10              (2) resulted in a decision that was based on an unreasonable
                determination of the facts in light of the evidence presented
11              in the State court proceeding.

12          For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings

13   of the United States Supreme Court at the time of the last reasoned state court decision.

14   Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 565 U.S. 34,

15   39 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529

16   U.S. 362, 405-406 (2000)). Circuit precedent may not be "used to refine or sharpen a general

17   principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has

18   not announced." Marshall v. Rodgers, 569 U.S. 58, 63-64 (2013) (citing Parker v. Matthews, 567

19   U.S. 37, 48 (2012)). Nor may it be used to "determine whether a particular rule of law is so

20   widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

21   be accepted as correct. Id.

22          A state court decision is "contrary to" clearly established federal law if it applies a rule

23   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

24   precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003).

25   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

26   writ if the state court identifies the correct governing legal principle from the Supreme Court's

27   decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v.

28   Andrade, 538 U.S. 63, 75 (2003); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  In this

1    regard, a federal habeas court "may not issue the writ simply because that court concludes in its

2    independent judgment that the relevant state-court decision applied clearly established federal law

3    erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams</u>, <u>supra</u>,

4    529 U.S. at 412. <u>See also Lockyer</u>, <u>supra</u>, 538 U.S. at 75 (it is "not enough that a federal habeas

5    court, 'in its independent review of the legal question,' is left with a 'firm conviction' that the

6    state court was 'erroneous.' ") "A state court's determination that a claim lacks merit precludes

7    federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state

8    court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (quoting <u>Yarborough v.</u>

9    <u>Alvarado</u>, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus

10   from a federal court, a state prisoner must show that the state court's ruling on the claim being

11   presented in federal court was so lacking in justification that there was an error well understood

12   and comprehended in existing law beyond any possibility for fairminded disagreement."

13   <u>Harrington</u>, 562 U.S. at 103.

14          The court looks to the last reasoned state court decision as the basis for the state court

15   judgment. <u>Wilson v. Sellers</u>, 138 S.Ct. 1188, 1192 (2018). "[Section] 2254(d) does not require a

16   state court to give reasons before its decision can be deemed to have been 'adjudicated on the

17   merits.' " <u>Harrington</u>, 562 U.S. at 100. Rather, "[w]hen a federal claim has been presented to a

18   state court and the state court has denied relief, it may be presumed that the state court

19   adjudicated the claim on the merits in the absence of any indication or state-law procedural

20   principles to the contrary." <u>Id.</u> at 99. This presumption may be overcome by a showing "there is

21   reason to think some other explanation for the state court's decision is more likely." <u>Id.</u> at 99-100.

22   Similarly, when a state court decision on a petitioner's claims rejects some claims but does not

23   expressly address a federal claim, a "federal habeas court must presume (subject to rebuttal) that

24   the federal claim was adjudicated on the merits." <u>Johnson v. Williams</u>, 568 U.S. 289, 293 (2013).

25   When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the

26   deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court

27   must review the claim de novo. <u>Stanley</u>, <u>supra</u>, 633 F.3d at 860.

28   ////

1      The state court need not have cited to federal authority, or even have indicated awareness

2 of federal authority in arriving at its decision. Early v. Packer, 537 U.S. 3, 8 (2002). Where the

3 state court reaches a decision on the merits but provides no reasoning to support its conclusion, a

4 federal habeas court independently reviews the record to determine whether habeas corpus relief

5 is available under Section 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848,

6 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional

7 issue, but rather, the only method by which we can determine whether a silent state court decision

8 is objectively unreasonable." Id. at 853. Where no reasoned decision is available, the habeas

9 petitioner still has the burden of "showing there was no reasonable basis for the state court to

10 deny relief." Harrington, supra, 562 U.S. at 98. A summary denial is presumed to be a denial on

11 the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 n. 3 (9th Cir. 2012).

12 While the federal court cannot analyze just what the state court did when it issued a summary

13 denial, the federal court must review the state court record to determine whether there was any

14 "reasonable basis for the state court to deny relief." Harrington, 562 U.S. at 98.  This court "must

15 determine what arguments or theories [...] could have supported, the state court's decision; and

16 then it must ask whether it is possible fairminded jurists could disagree that those arguments or

17 theories are inconsistent with the holding in a prior decision of this Court." Id. at 102.

18 " '[E]valuating whether a rule application was unreasonable requires considering the rule's

19 specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-

20 by-case determinations.' " Id. at 101 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

21 Emphasizing the stringency of § 2254(d), which "stops short of imposing a complete bar of

22 federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme

23 Court has cautioned that "even a strong case for relief does not mean the state court's contrary

24 conclusion was unreasonable." Id. at 102.

25 ////

26 ////

27 ////

28 ////

*Discussion*

    1.  <u>Failure to [*Sua Sponte*] Instruct the Jury on the "Lesser Included Offense" of</u>
       <u>Attempted Indecent Exposure</u>

    The undersigned has placed the "lesser included offense" of attempted indecent exposure in quotes as it is not clear from California law whether such a lesser included offense exists.  And although, as pointed out below, no federal claim in habeas corpus exists for "*sua sponte*" jury instructions in non-capital cases. The issue here is a bit more complicated than that, especially as it impacts ineffective assistance of counsel discussed in the next section regarding "theory of the defense case," and whether counsel failed to request a lesser included offense instruction on the "correct" explication of California law.  Therefore, the undersigned spends some effort in characterizing California indecent exposure law and "lesser included offenses."

    First, whether characterized as an indecent exposure charge, or one for attempted indecent exposure, the charge is a misdemeanor with one important exception discussed below. Cal. Penal Code § 314 provides the following:

> Every person who willfully and lewdly, either:
>
> 1. Exposes his person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby; or,
>
> 2. Procures, counsels, or assists any person so to expose himself or take part in any model artist exhibition, or to make any other exhibition of himself to public view, or the view of any number of persons, such as is offensive to decency, or is adapted to excite to vicious or lewd thoughts or acts, is guilty of a misdemeanor.

    The pertinent exception here to the misdemeanor status of the crime is prior convictions for indecent exposure or other sex crimes:

> Upon the second and each subsequent conviction under subdivision 1 of this section, or upon a first conviction under subdivision 1 of this section after a previous conviction under Section 288, every person so convicted is guilty of a felony, and is punishable by imprisonment in state prison.

Cal. Penal Code § 314.

    It is undisputed here that petitioner had qualifying previous convictions thereby rendering his conviction a felony. More to petitioner's dismay, he also tripped the "Three Strikes" wire

1  thereby exploding the otherwise usual misdemeanor punishment into an indeterminate life-in-

2  prison term.

3          Generally, in California, an attempted violation of a criminal statute is by practical

4  definition (although not substantively) a lesser included offense because the punishment for the

5  attempt is not the same as the punishment for actual commission of the crime, unless the statute in

6  question includes both the crime and the attempt of the crime in its language. See, e.g., Cal. Penal

7  Code § 664; People v. Cummings, 61 Cal. App. 5th 603, 609 (2021) (court interprets Cal. Penal

8  Code § 664); In re Maria D., 199 Cal. App. 4th 109, 114 (2011) ("In this respect, the general

9  statute that proscribes the attempted commission of crimes—section 664—applies to criminal

10 conduct only if " 'no [other] provision is made by law for the punishment of those attempts... .' "

11 (People v. Duran (2004) 124 Cal.App.4th 666, 674, 21 Cal.Rptr.3d 495, quoting section 664.)").

12 In general, the punishment for attempt of a specific crime, under Cal. Penal Code § 664, unless

13 otherwise specifically proscribed, is one-half the punishment for completed commission of the

14 crime at issue.

15         Thus, if there is such a crime as "attempted indecent exposure," the penalty could only be

16 one-half the penalty for indecent exposure as there is no specific reference to attempted indecent

17 exposures in Cal. Penal Code § 314. And the prior conviction exception to the misdemeanor

18 status of indecent exposure referenced above does not apply to "attempted" indecent exposure

19 convictions. People v. Finley, 26 Cal. App. 4th 454, 456 (1994).[3]

20         Petitioner believes that his jury should have been given an attempted indecent exposure

21 instruction because the theory of the defense was that although the indecent act took place, the

22 victim could not have seen his indecent exposure rendering the conduct only an attempt at

23 indecent exposure. Although petitioner's desire to have such an attempt instruction is

24 ////

25         [3] But see, People v. Cummings, 61 Cal App. 5th 603, 612 (2021) refusing to follow
Finley. If an attempt at indecent exposure were to be found a felony because of prior convictions,
26 at least one California case has held that the Three Strikes law takes precedence over the attempt
statute, § 664.  People v. Espinoza, 58 Cal. App. 4th 248, 251-252 (1997).  Petitioner does not,
27 and has not raised a sentencing issue.  In any event, as the discussion in this case indicates infra,
28 petitioner could not have been convicted of attempted indecent exposure.

8

understandable, because of the nature of his charge and the evidence in the case, no such instruction was substantively correct or indicated.

As indicated above, the controlling statute does not mention attempted indecent exposure. And, the law is not clear that such a charge is correct, or at least, practically available. It is true that some prosecutions have charged attempted indecent exposure, possibly in an abundance of caution, because the victim could not have seen the exposure. On appeal, without discussing whether such a charge was available or necessary, the courts have upheld the conviction. See People v. Rehmeyer, 19 Cal App. 4th 1758, 1766, 1767 (1993). However, as held by People v. Hubbard, 52 Cal. App. 5th at 569 (this case), in distinguishing Rehmeyer, nothing in the indecent exposure statute *requires* that the victim actually see the indecent act in order for the defendant to be convicted for the "straight" indecent exposure itself. See also People v. Carbajal, 114 Cal. App. 4th 978, 986 (2003). Hubbard, 52 Cal. App. 5th at 570, went on to find that the facts of this case rendered any "attempt" instruction unwarranted:

> However, the issue here is not whether Nayeli actually observed defendant's genitals. Rather, the issue is whether, in Nayeli's presence, defendant willfully exposed himself lewdly for the purpose of sexually gratifying himself or offending Nayeli. Defendant argues that a reasonable juror could have concluded that defendant's conduct satisfied all of the elements but that his genitals were not visible to Nayeli. But in that circumstance, defendant would still have satisfied the elements of indecent exposure. Therefore, we conclude there was no factual circumstance in which the jury could have found defendant guilty of attempted indecent exposure and not guilty of indecent exposure. (footnote omitted).

Thus, petitioner is in error that under California law such an instruction was required *sua sponte*.[4]

Moreover, even assuming for the moment that Hubbard erroneously set forth California law, petitioner's belief that he can claim federal error for the failure to give an instruction *sua sponte* is incorrect. In Carter v. McDonald, No. CIV S-08-2103 GGH P, 2009 WL 4718747, at

---

[4] Both Hubbard and Carbajal make one wonder what an attempted indecent exposure could be, e.g. fumbling with a zipper? However, Hubbard is the law of this case, and it does not contravene any known federal principle. Nor can the undersigned quibble with its interpretation of California law even if the undersigned thought it to be incorrect (which he does not here).

*5-6 (E.D. Cal. Dec. 3, 2009), the undersigned stated the following:

> At the outset, the court notes that in a non-capital case, such as the one presented here, the "[f]ailure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir.1984) (quoting *James v. Reese*, 546 F.2d 325, 327 (9th Cir.1976) (per curiam)). While the United States Supreme Court, in *Beck v. Alabama*, 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), has held that criminal defendants possess a constitutional right to have the jury instructed on a lesser included offense in a capital murder case, the *Beck* court also expressly reserved the question of whether due process mandates the application of the same right in a non-capital case. *See Beck*, 447 U.S. at 638, n. 7; *Solis v. Garcia*, 219 F.3d 922, 928 (9th Cir.2000). Thus, in a non-capital case, the failure of a trial court to sua sponte instruct on a lesser included offense does not present a federal constitutional question that would warrant habeas corpus relief. *Windham v. Merkle,* 163 F.3d 1092, 1106 (9th Cir.1998).
>
> The Ninth Circuit in *Solis* noted that there might exist an exception to this general rule for adequate jury instructions on a defendant's theory of defense. *Solis*, 219 F.3d at 929 (citing *Bashor*, 730 F.2d at 1240, but noting that *Windham*, 163 F.3d at 1106, mentioned no such exception to the general rule).

See also Kakowski v. Pollard, No. 2:20-cv-00549 KJM GGH P, 2020 WL 7041722, at *3 (E.D. Cal. Dec. 1, 2020); Phan v. Adams, No. CV 15-5358-RGK (KES), 2016 WL 5387671, at *9-10 (C.D. Cal. June 28, 2016).

In this AEDPA setting, if the Supreme Court has not "unreserved" its ruling, which it has not, no federal claim exists. In any event, the undersigned will discuss the "theory of the defense" issue in the ineffective assistance of counsel section below.

Nevertheless, petitioner's claim alleging the trial court's failure to *sua sponte* give a lesser included offense instruction should be denied.

2.  Ineffective Assistance of Counsel in Not Requesting an Attempted Indecent Exposure Instruction

Respondent has not addressed this claim, and it was clearly set forth in the petition.[5] ECF No. 1 at 5. The claim was clearly exhausted. ECF No. 9-8 at 25-26; see also ECF No. 9-4.

---

[5] The undersigned does not consider the in-passing, half sentence referencing ineffectiveness of counsel as addressing the claim. See ECF No. 11 at 5 n. 2.

1    Perhaps this oversight was occasioned by the failure to submit briefing in the petition in addition

2    to the statement of the claim. Perhaps, it was caused by the cryptic, oblique reference to

3    ineffective assistance of counsel as "other issues" in the appellate opinion. ECF No. 9-7 at 17 n.

4    4.  Ineffective assistance of counsel in the lesser included offense issue was not directly addressed

5    by the appellate court.

6           What to do? Default in habeas proceedings is not a realistic sanction. See Peterson v.

7    Lizarraga, No. 1:17-cv-01537-LJO-SKO HC, 2018 WL 3637038, at *3-4 (E.D. Cal. July 30,

8    2018); Arvizu v. Ryan, No. CV-16-3347-PHX-ROS (JFM), 2017 WL 10858843, at *6-7 (D.

9    Ariz. Aug. 7, 2017); McKinney v. Wofford, No. 1:14-cv-01751-SAB-HC, 2015 WL 1830474, at

10   *2 (E.D. Cal. Apr. 9, 2015). If this were a consent case, the undersigned would order respondent

11   to respond to the claim, perhaps consider lesser sanctions, await the briefing, and then address all

12   claims. However, this is not a consent case, and there are already enough time inefficiencies

13   baked into the Findings and Recommendations process, that the undersigned will not set this case

14   aside for further briefing. In addition, as of January 1, 2022, the undersigned will be completely

15   retired; the effort put into this case will have been wasted, and the inefficiencies doubled because

16   a colleague would be starting from scratch. Moreover, since the standard of review by the district

17   judge is de novo, petitioner will have ample opportunity to object to any findings by the

18   undersigned. Therefore, the undersigned will simply decide the issue here, which basically

19   follows from the previous section.

20          The standards for ineffective assistance of counsel in an AEDPA case are well

21   established.

22          The challenger's burden is to show "that counsel made errors so
23          serious that counsel was not functioning as the 'counsel' guaranteed
             the defendant by the Sixth Amendment." Id., at 687, 104 S.Ct.
24          2052. [Strickland v. Washington, 466 U.S.668 (1984)]

25          With respect to prejudice, a challenger must demonstrate "a
             reasonable probability that, but for counsel's unprofessional errors,
26          the result of the proceeding would have been different. A
             reasonable probability is a probability sufficient to undermine
27          confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not
             enough "to show that the errors had some conceivable effect on the
28          outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's
             errors must be "so serious as to deprive the defendant of a fair trial,

a trial whose result is reliable." *Id*., at 687, 104 S.Ct. 2052.

***

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles,* 556 U.S., at 123, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, supra, 562 U.S. at 104-105 (emphasis added).

Defense counsel was not unaware of her client's potential punishment, and she ultimately did request a lesser include offense instruction. However, she asked that the court give an instruction pursuant to Cal. Penal Code § 647(a)—engaging in lewd or dissolute conduct. See ECF No. 9-3 at 24, 122, 126.  Counsel specifically demurred to asking for a lesser included offense instruction to the extent such was possible under Section 314. Id. at 122. The trial judge denied the request for a lesser included offense instruction.

The benefit of this requested instruction pursuant to Cal. Penal Code § 647 was that the only penalty proscribed for a violation of section (a) was a misdemeanor penalty; this statute did not have a felony conversion aspect as did Cal. Penal Code § 314.  However, this benefit was not to be realized as the California courts have recognized, ever since Pryor v. Municipal Court, 25 Cal.3d 238, 256, (1979), and despite earlier authority to the contrary, that Cal. Penal Code § 647 is not a lesser included offense to a Cal. Penal Code § 314 charge. People v. Meeker, 208 Cal. App. 3d 358, 361-362 (1989). Thus, counsel's request was a long shot, and not one authorized by the law.

However, petitioner asserts that the request for a lesser included offense should have been made under the rubric of "attempted indecent exposure" within Cal. Penal Code § 314 because the rubric had been at least recognized in previous cases. See discussion above. Petitioner

12

1   essentially asserts that this instruction, which did indeed arise from the theory of the defense,[6]

2   was mandated, and counsel should have known this. Of course, as set forth above, if the jury had

3   determined to adopt this rubric, no felony punishment may have been possible. Finley, supra.

4          Nevertheless, in this case, the Court of Appeal held that attempted indecent exposure was

5   not a viable theory in the case (and perhaps any case). The undersigned is not prepared to quibble

6   with the Court of Appeal over its decision based on state law. The upshot is that counsel cannot

7   be ineffective if the law and/or facts did not support what petitioner urges his counsel should have

8   attempted. See Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) (not asserting a futile claim or

9   argument cannot be ineffective assistance of counsel). Accordingly, this claim should be denied.

10         3.   Griffin Error

11         In what the Court of Appeal considered was a "close case," petitioner's claim that the

12   prosecutor had commented on his Fifth Amendment to remain silent was ultimately found

13   wanting by that Court. Because in this AEDPA context, the focus is on the reasonableness of the

14   state courts' decision, and because the Court of Appeal gave a thoughtful and thorough

15   discussion, the undersigned will set forth large portions of that discussion herein:

16              During her closing argument, defense counsel argued that defendant
                was merely a student who had to urinate: "So this student is leaving
17              campus. He has to take a pee. He is walking down the stairs. He is
                going to the Light Rail station. He has no idea how many people
18              might be standing there at that Light Rail station. There is one
                person where he is, okay? There is one person that he just walked
19              past. She had just stopped in front of him at the top of those stairs.
                He passed her. He glances back once to check is she going to stay
20              there. Is this a private place or not." Two short paragraphs of the
                transcript from the end of her closing, defense counsel emphasized
21              the lack of physical evidence against defendant and told the jury
                that: "In no way, shape or form did the government give a student
22              any chance of proving he is not guilty." (Italics added.) The trial
                court sustained the prosecutor's objection that the argument
23              assumed facts not in evidence.

24              After a recess, at the beginning of his rebuttal argument, the
                prosecutor read CALCRIM No. 355: "A defendant has an absolute
25              constitutional right not to testify. He may rely on the state of the

26   _____
            [6] The defense did not offer any evidence and rested immediately after the prosecution
27   case. However, it was clear from the cross-examination that defense counsel was attempting to
     show that the victim/witness could not have seen petitioner's actions because of some signs
28   proximate to petitioner's position.

13

evidence and argue that the People have failed to prove the charges beyond a reasonable doubt. Do not consider for any reason at all the fact the defendant did not testify. Do not discuss that fact during your deliberations or let it influence your decision in any way."

The prosecutor then argued: "That's the law and you guys have to follow it. You must understand that. Also, the burden in this case, it's with the People. It's with me. It never shifts. [Defense counsel] is absolutely correct when she tells you they don't have to do anything. They don't have to put on any evidence.

"But now let's talk about what they are not allowed to do. She's not allowed to get up here in closing and make up facts of which there is no evidence of that. What am I talking about? Well, apparently he's a college student who was getting out of class, going to the Light Rail station, stopped to pee. What evidence did we hear of that? What evidence at all?

"He had a collared shirt and a backpack on. That is true. You heard that evidence. You didn't hear any evidence of the narrative she spun about this innocent man walking after getting out of college class going to the Light Rail station, zero, none.

"The defendant has an absolute right not to testify, but she cannot use that as a sword and a shield. And that's what she did. And the reason she did it, because these facts don't break good for her or her client. You are left with the evidence you heard."

The prosecutor concluded his rebuttal: "Did [defendant] sit around innocently peeing or just hanging out facing the Winn Center? No, he didn't. He went to the Light Rail station. [¶] The facts are clear, the evidence is uncontroverted. The defendant has a constitutional right to the presumption of innocence. He has that throughout these proceedings, up and until you are convinced otherwise. The burden never shifts. Remember that. But what he is not entitled to do is a made up universe of facts that was just given to you in the defense attorney's closing argument."

At the conclusion of the prosecutor's argument, defense counsel requested to approach the bench. The lawyers and the court conferenced in chambers. After giving the jury its final instructions and dismissing it to begin deliberations, the court told defense counsel, "I know you have something you want to put on the record ... so we will get to that in just a moment." After addressing other procedural issues, the court stated, "And your argument on the closing, Ms. Cunningham." Defense counsel then objected to the prosecutor's argument; she argued he improperly drew attention to the fact that defendant did not testify before arguing there was no evidence to support defense counsel's version of the events. According to defense counsel, the prosecutor's argument implied defendant should have testified. She requested a curative instruction.

The trial court observed the prosecutor had a right to recite any jury instruction, and it was not improper to highlight the fact that there

was no evidence that defendant was merely urinating. It did not give a curative instruction.

Hubbard, supra, 52 Cal. App. 4th at 560-561.

There is no doubt that defense counsel had fabricated the "pee" scenario, and no such evidence had been admitted.

The Court of Appeal engaged in a lengthy discussion of the Supreme Court case, Griffin v. California, 380 U.S. 609 (1965), which generally prohibits a prosecutor's comments on the defendant's failure to testify. Included within that discussion, however, was the Supreme Court exception to the general rule:

> As relevant here, under certain specific circumstances a prosecutor's reference to a defendant's opportunity to testify may be properly classified as fair response to defense counsel's argument. This tactic is not without risk, but the United States Supreme Court has described a situation where a reference to a lack of evidence coming from defendant himself does not violate his Fifth Amendment privilege. In *United States v. Robinson* (1988) 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23, defense counsel urged during closing argument that the government had not allowed defendant to explain his side of the story in a mail fraud prosecution. The prosecutor responded during his closing that defendant " 'could have taken the stand and explained it to you ....' " ( *Id*. at p. 28, 108 S.Ct. 864.) The Court observed that the prosecutor's comment referred to defendant's decision to not testify as declining an opportunity to tell his side of the story. ( *Id*. at pp. 31-32, 108 S.Ct. 864.) The Court did not find error, explaining the difference between *Griffin* error and the prosecutor's comments in *Robinson*: "Where the prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, *Griffin* holds that the privilege against compulsory self-incrimination is violated. But whereas in this case the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege." ( *Id*. at p. 32, 108 S.Ct. 864.) The Court observed, " '[The] central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, [citation] ....' [Citation.] To this end it is important that both the defendant and the prosecutor have the opportunity to meet fairly the evidence and arguments of one another." ( *Id*. at p. 33, 108 S.Ct. 864.) "It is one thing to hold ... that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, as defendant does here, that the same reasoning would prohibit the prosecutor from fairly responding to an argument of the defendant by adverting to that silence." ( *Id*. at p. 34, 108 S.Ct. 864.)

Hubbard, 52 Cal. App. 4th at 563-564.

15

The threshold issue here is whether AEDPA applies to the <u>Griffin</u> discussion as the Court of Appeal expressly recognized that the California standard of review was different in some respects from that of the federal review.

> "What is crucial to a claim of prosecutorial misconduct is not the good faith *vel non* of the prosecutor, but the potential injury to the defendant." ( *People v. Benson* (1990) 52 Cal.3d 754, 793, 276 Cal.Rptr. 827, 802 P.2d 330.) "Under the federal standard, prosecutorial misconduct that infects the trial with such ' "unfairness as to make the resulting conviction a denial of due process" ' is reversible error. [Citation.] In contrast, under our state law, prosecutorial misconduct is reversible error where the prosecutor uses 'deceptive or reprehensible methods to persuade either the court or the jury' [citation] and ' "it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct" ' [citation]." ( *People v. Martinez* (2010) 47 Cal.4th 911, 955-956, 105 Cal.Rptr.3d 131, 224 P.3d 877.)

<u>Hubbard</u>, 52 Cal. App. 4th at 562.

One could validly question whether there is any real distinction between the federal standard and that of California. Moreover, the distinction, if any, refers to the harmfulness of the error.  As seen above, to analyze the error itself, <u>Hubbard</u> heavily relied upon Supreme Court authority.  In the harmfulness respect, if there is any substantial difference between California law and the <u>Brecht</u>[7] standard (substantially harmful and injurious to the verdict) the undersigned cannot see it. And <u>Griffin</u> error would ultimately be judged by the <u>Brecht</u> standard in any event. <u>See</u> <u>Cook v. Schriro</u>, 538 F.3d 1000, 1019 (9th Cir. 2008). If anything, the California standard might be considered more strict-to-the-prosecution, thereby causing the analysis to be subsumed within the <u>Brecht</u> standard.[8]  However, in this case, the Court of Appeal found no <u>Griffin</u> error to

---

[7] <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993).

[8] On federal habeas review of state court findings of constitutional error, the harmless error standard of <u>Brecht</u>, 507 U.S. 619, applies. The question is whether the error had substantial and injurious effect or influence in determining the jury's verdict, and resulted in "actual prejudice." <u>See</u> <u>Brecht</u>, 507 U.S. at 637; <u>Fry v. Pliler</u>, 551 U.S. 112, 120 (2007).  The Supreme Court has since clarified that <u>Brecht</u> incorporates the requirements of § 2254(d) (AEDPA). <u>Davis v. Ayala</u>, 576 U.S. 257, 269-270 (2015). Accordingly, if a state court has determined that a trial error was harmless, "a federal court may not award habeas relief under § 2254(d) unless the harmlessness determination itself was unreasonable." <u>Id.</u> (quoting <u>Fry v. Pliler</u>, 551 U.S. at 119 (emphasis in original)). "[R]elief is proper only if the federal court has 'grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining

16

1  begin with and did not engage in a harmlessness analysis. Therefore, on the merits of the <u>Griffin</u>

2  error, AEDPA applies in full force, and if necessary, the <u>Brecht</u> standard will be applied *de novo*.

3       In consideration of the alleged <u>Griffin</u> error itself, as explained by the Court of Appeal,

4  whether the prosecutor fairly responded to the defense "made up" evidence argument, the Court

5  of Appeal held:

6           The prosecutor fairly observed that defense counsel had just argued
           a version of the facts largely lacking in evidentiary support--the
7           sword--while not subjecting defendant or that version of the facts
           generally to cross examination--the shield. And, importantly, as we
8           have described above, defense counsel had just told the jury that
           "the government" had not, in any "way, shape, or form," given
9           defendant the "chance of proving he is not guilty." Under *Robinson*
           and *Lewis*, this argument permitted the prosecutor to counter the
10          suggestion that defendant was somehow precluded by the
           government from telling his story. While we recognize that, for
11          practical purposes, defendant was not able to testify given his prior
           sex offenses (see  Evid. Code, § 788; *People v. Linyard* (1957) 151
12          Cal.App.2d 50, 55, 311 P.2d 57), here defense counsel herself
           raised the issue.
13
                                    ***
14
           Our Supreme Court has held that a prosecutor may commit *Griffin*
15          error if he argues to the jury that certain testimony or evidence is
           uncontradicted, if such contradiction or denial could be provided
16          only by the defendant, who therefore would be required to take the
           witness stand. ( *People v. Johnson* (1992) 3 Cal.4th 1183, 1229, 14
17          Cal.Rptr.2d 702, 842 P.2d 1.) The prosecutor may, however,
           describe the evidence as "unrefuted" or "uncontradicted" where the
18          evidence could have been contradicted by witnesses other than
           defendant. ( *Ibid.*) In  *People v. Bruce G.* (2002) 97 Cal.App.4th
19          1233 at pages 1244 to 1245, 118 Cal.Rptr.2d 890, we observed that
           a prosecutor may characterize evidence as "uncontroverted" even
20          where the defendant is the only person who could have known what
           did or did not happen if the prosecutor was commenting on the
21          entire state of the evidence.

22          Here, defendant could have presented other witnesses to support his
           counsel's version of events. For example, defendant could have
23          called his professor, a classmate, or an administrator to testify that
           he was in a class that had concluded immediately before the
24          incident or some other fact to show that he was, indeed, "a student,"
           as counsel argued. Moreover, here the prosecutor's statement that
25          the evidence was "uncontradicted" was a comment on the state of

26  the jury's verdict.' " <u>Davis</u>, 576 U.S. at 267-268 (quoting <u>O'Neal v. McAninch</u>, 513 U.S. 432,

27  436, 115 S.Ct. 992 (1995)). The <u>Brecht</u> test will be applied, but with due consideration of the
   state court's reasons for concluding the error was harmless beyond a reasonable doubt. <u>Jones v.</u>
28  <u>Harrington</u>, 829 F.3d 1128, 1141-42 (9th Cir. 2016).

the evidence rather than a comment on defendant's failure to testify. The comment simply observed, correctly, that no evidence contradicting Nayeli's version of events had been present. Because the prosecutor's statements were fair comments in response to a defense argument that was not based on actual evidence admitted at trial, this segment of the argument was also permissible.

For these reasons, we conclude the prosecutor did not commit *Griffin* error in any of his challenged comments during his rebuttal argument.

Hubbard, 52 Cal. App. 4th at 565-566.

Given the rather desperate ploy of the defense to place a non-introduced version of facts in final argument, along with the temerity to suggest that defendant had not been permitted to put his case before the jury, reasonable jurists could easily have come to the same conclusion as did the Court of Appeal.  Indeed, the only disagreement the undersigned might have with the Court of Appeal was its observation that Griffin error was a "close case."  This was not close whether in terms of AEDPA or *de novo* review.

Even if a Brecht analysis were to be performed because of Griffin error, it is clear that the prosecutor's comments could not have had a substantial, harmful effect on the verdict. Petitioner did not contest that he was at the scene, or that he performed the indecent act. His defense, as it appeared through cross-examination, was that the victim/witness was wrong when she stated (with great certainty) that she indeed had seen petitioner perform the indecent act. A prosecutor's oblique comment on petitioner's silence or failure to present himself as a witness paled in light of the certainty with which the complainant testified. The evidence before the jury strongly proved that petitioner had performed his indecent act within the sight of the complainant.

Accordingly, the Griffin error claim should be denied.

4.   Admission of a Prejudicial Photo(s)

Petitioner contests that admission of a booking photo arguably made him look sinister, intoxicated or some other undesirable attribute. The petition focuses upon petitioner's unflattering booking photo, which was introduced by the prosecution, as found by the Court of Appeal, for no good reason. Slightly referenced is a "lovely" photo of the complainant which was also introduced by the prosecution for irrelevant reasons.

18

Respondent contends that the issue is unexhausted because the appellate brief, ECF No. 9-4 completely focused on state law, but in the petition for review, ECF No. 9-8 at 28, the new headline issue was a federal lack of due process, albeit the brief dealt mainly with state law. Respondent contends that because federal law was left out of the appellate brief, the belated reference to it in the petition for review did not fairly present the issue.

Respondent is correct in the main, but not completely. The appellate brief did reference federal due process and federal cases at ECF No. 9-4 at 65. This discussion was repeated in the petition for review. ECF No. 9-8 at 29-30.  Respondent contends that the unexhausted status of the claim "bars" it from federal review.  Respondent does not contend that the unexhausted status of the claim must result in a dismissal without prejudice. See Rose v. Lundy, 455 U.S. 509 (1982) (mixed petitions (exhausted and unexhausted claims) may not be reviewed by the federal courts.)

The undersigned will not engage in the hairsplitting analysis of whether the reference to federal law in the state briefs substantially exhausts the claim. Rather, assuming the claim is unexhausted, it may be denied if found lacking on the merits. See 28 U.S.C. 2254(b)(2).

In the part of the opinion that was unpublished, the Court of Appeal found the following:

> The prosecutor sought to introduce defendant's booking photograph and a photograph of Nayeli taken before the incident. In defendant's photograph, his eyes appear red, watery, and almost closed. The top of the photo states defendant's "Arrest Number." The photograph extends to defendant's top shoulder and neck area; he appears to be wearing a dark-colored outer layer, although it is not clear what that garment is, and possibly a collared shirt. To the extent the photograph would otherwise show defendant's clothes, almost all of that area is covered by defendant's long, dreadlocked hair. Defendant had not changed his appearance since the photograph was taken.
>
> Nayeli presents in her photograph as a smiling and pleasant young lady, possibly at some kind of event. She testified the photograph was taken around the time of the incident, which was less than nine months before trial. No evidence suggested her appearance had changed between the date of the incident and the date of her testimony.
>
> ***
>
> C. *Booking Photo*
>
> Defendant's booking photograph was not relevant. Identity was not disputed. Defense counsel sought to establish that Nayeli

19

could not see what defendant was doing behind the signs, but she did not argue he was not there. Even if identity were disputed,

the booking photograph was only minimally relevant to proving identity. Nayeli identified defendant in person the night of the incident, and she identified him in court. The officer who responded to the scene identified defendant in court and identified defendant as the person in the booking photograph, but did not testify that defendant's physical appearance had changed.

Moreover, the parties agreed that the photograph does not depict defendant as he looked that evening. The photograph only shows the collar portion of what defendant wore on the night in question, which was not in dispute. The parties agree the photograph depicted defendant "mid-blink," which we presume was not how defendant looked while interacting with Nayeli. To the extent that the photograph was relevant to show his haircut, facial hair, or other identifying features, defendant had not changed any of those things between the date of his arrest and the trial date.

Any marginal relevance was substantially outweighed by its prejudicial effect. Defendant's nearly-closed, red, watery eyes give the appearance of intoxication. As argued by defense counsel at trial, the photograph is very unflattering. In our view, the booking photograph only served to provide the jury with a lasting, negative image of defendant. It was an abuse of discretion to admit the irrelevant, prejudicial photograph.

D. *Photo of Nayeli*

The photograph of Nayeli was completely irrelevant. We are not persuaded by the prosecutor's argument that he "use[s] them in Power Point closings" and the trial court's conclusion that the photograph was admissible to "remind the jury of who she is." Nayeli was one of only three witnesses to testify during the only day of testimony and had testified the day before. On appeal, the Attorney General argues the photograph of Nayeli "was relevant to whether [defendant] [w]as guilty of the charged crime. Accordingly, the photo was relevant." How exactly the photograph is relevant, the Attorney General does not say. Frankly, the argument makes no sense. It was an abuse of discretion to admit the photograph.

ECF No. 9-7 at 17-20.

The Court of Appeal went on to find the error harmless utilizing its state law standard:

"only if the appellate court concludes that it is reasonable probable the jury would have reached a

different result had the photograph been excluded." Id. at 21. The Court of Appeal elaborated:

We conclude it was not reasonably probable that the jury would have returned a different verdict had the photographs been excluded. Nayeli testified the previous day, and the impression of

20

her testimony was likely fresh in the jury's mind. The photograph of Nayeli did not affect her version of events as explained through her testimony. While the photograph tends to show Nayeli in a favorable light, which could make her appear more sympathetic to the jury, we conclude it was not reasonably probable any such sympathy would have changed the verdict.

Similarly, the jury had the opportunity to observe defendant throughout the trial. Testimony at trial informed the jury that defendant was arrested on the night in question, and nothing in the photograph suggested defendant had previously been arrested, so the photograph provided no new information. Both counsel told the jury that defendant was not intoxicated at the time of the incident. It was not reasonably probable that defendant would have received a different result at trial had the photograph been properly excluded. Therefore, the error in admitting the photographs was harmless.

ECF No. 9-7 at 21.

The undersigned would add that petitioner never argued that it was some other person at the scene that night, nor that the indecent act did not take place.  Thus, the pictures had nothing to do with the jury's assessment of what was simply undisputed evidence.  Moreover, petitioner's present appearance to the jury, as well as the complainant, would have been much more remembered than a couple of irrelevant photographs.

Generally, the alleged error in the admission of overly prejudicial evidence will not state a cognizable claim in federal habeas. Holley v. Yarborough, 568 F.3d 1091, 1101 fn. 2 (9th Cir. 2009) (emphasis added) (noting that if it were free to rule on the issue, the Ninth Circuit would have found a violation of due process.) See also Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008); Alberni v. McDaniel, 458 F.3d 860, 866 (9th Cir. 2006); Soojian v. Lizarraga, No. 1:16-cv-00254-AWI-SAB-HC, 2018 WL 3155617 (E.D. Cal. June 25, 2018); Jones v. Spearman, No. 16-cv-03627-JD, 2018 WL 424402, at *4 (N.D. Cal. Jan. 16, 2018); Garcia v. Madden, No. EDCA 17-00049-DOC (JDE), 2018 WL 910184, at *15 (C.D. Cal. Jan. 5, 2018).

However, if the evidence is *both* irrelevant and prejudicial, a federal due process claim is started. Dawson v. Delaware, 503 U.S. 159 (1992), finding that the Aryan Brotherhood evidence introduced in Dawson was totally irrelevant as well as prejudicial.  Dawson remanded the case to the Delaware courts for a harmless error standard.

////

1    In federal habeas, harmless error is, as set forth on footnotes 7 and 8 of this Findings and

2    Recommendations, whether the error had a substantial and injurious effect on the verdict. <u>See</u>

3    <u>also</u> <u>Schneider v. McDaniel</u>, 674 F.3d 1144, 1150 (9th Cir. 2012). There is no daylight between

4    this standard and the standard utilized by the state appellate court.  For all the reasons set forth

5    above, the harmfulness of the irrelevant evidence on the verdict was nil. Accordingly, this claim

6    should be denied.

7    *Certificate of Appealability*

8    Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must

9    issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A

10   certificate of appealability may issue only "if the applicant has made a substantial showing of the

11   denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings

12   and recommendations, a substantial showing of the denial of a constitutional right has been made

13   in this case.

14   *Conclusion*

15   IT IS HEREBY RECOMMENDED that:

16   1. The habeas petition should be DENIED; and

17   2.  The district court decline to issue a certificate of appealability.

18   These findings and recommendations are submitted to the United States District Judge

19   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

20   after being served with these findings and recommendations, any party may file written

21   objections with the court and serve a copy on all parties.  Such a document should be captioned

22   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the

23   objections shall be served and filed within fourteen days after service of the objections.  The

24   parties are advised that failure to file objections within the specified time may waive the right to

25   appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

26   Dated: December 7, 2021

27                     <u>/s/ Gregory G. Hollows</u>
                     UNITED STATES MAGISTRATE JUDGE

28

22